Jasen, J. (dissenting).
Petitioner, Archie Schwartz Company, is a real estate brokerage firm incorporated and licensed *851 in New Jersey. Petitioner, Elmer Schwartz, the company’s president, holds a nonresident real estate broker’s license, issued by the New York Department of State, as representative of the Schwartz Company. Andover Realty, Inc. is a real estate brokerage firm incorporated and licensed in New York. At the time of the events giving rise to this proceeding, Andover did not hold a reciprocal real estate brokerage license in New Jersey.
In December, 1966, Andover and Schwartz orally agreed to share brokerage commissions — one-third to Andover, two-thirds to Schwartz — earned from referrals furnished by Andover concerning New Jersey property. In February and April of 1967, Andover referred to Schwartz three corporate clients — Royaltone, Inc.; Leisure Time Accessories, Inc.; Newport Knitwear, Inc.— desirous of leasing industrial property in New Jersey. In June, July and September of 1967, Schwartz executed brokerage agreements with New Jersey property owners regarding these referrals. Coincidental to each brokerage agreement, Andover and Schwartz confirmed in writing their agreement to share commissions. Total commissions owing were in excess of $96,000, Andover’s share being one third, or some $32,000, of that sum.
Sometime in the latter part of 1967, apparently after execution of the brokerage and commission agreéments, Schwartz allegedly was informed by Helmsley-Spear, Inc., a New York brokerage company with an interest in the Royaltone transaction[1], that Andover was not licensed in New Jersey. Claiming, upon advice of counsel, that to pay Andover per the commission sharing agreement would subject it to revocation of its New Jersey license, Schwartz refused to perform the agreement.
Thereafter, in March, 1968, Andover sued in the Superior Court of New Jersey to enforce the commission agreements with respect to the Newport and Leisure transactions. In October, 1968, suit was brought on the Royaltone commission agreement. In January, 1970, on cross motions for summary judgment, summary judgment was granted in favor of Schwartz on the Newport and Leisure commissions. In holding for Schwartz, the court relied on New Jersey statutes (N. J. Stat., § 45:15-1 et seq.) providing that a person shall not *852 engage in the “business of a real estate broker” in New Jersey without being licensed and that a license may be suspended or revoked if the licensee pays a commission to “ anyone not possessed of a real estate license.” The cause with respect to the Royaltone transaction was set down for trial of factual issues.[2]
Upon complaint of Leonard Grero, Andover’s representative broker, a hearing was held on allegations that Schwartz had demonstrated untrustworthiness in its dealings with Andover in violation of article 12-A of the Real Property Law. The hearing officer credited the allegations of the complainant and found that with knowledge of the proscriptions of the New Jersey statutes and that Andover was unlicensed in New Jersey, Schwartz took advantage of Andover and proceeded to consummate transactions which it knew or should have known were tainted with illegal activity under New Jersey law. The Secretary of State concurred in the findings of the hearing officer and ordered that Schwartz’s license be revoked unless the commissions owing Andover were paid.
The Appellate Division annulled the determination as not based on substantial evidence and dismissed the charges. The court found the record lacking in evidence of bad faith on the part of Schwartz and it was further of the view that the New Jersey judgment should be accorded full faith and credit.
I would reverse the order of the Appellate Division and reinstate the determination of the Secretary of State. The finding that Schwartz duped Andover is amply supported by inferences that reasonably could be drawn from the evidence presented. The conclusion that such conduct constitutes a demonstration of untrustworthiness has warrant in the record and a reasonable. basis in law and should be sustained. The condition imposed upon retention of petitioners’ license is reasonable and is not made unreasonable merely because petitioners have placed themselves upon the horns of a dilemma with regard to retention of dual licensure in New Jersey and New York.
The finding that Schwartz, cognizant of the proscriptions of New Jersey law, knew Andover was unlicensed in New Jersey prior to signing the commission agreements is supported by *853 reasonable inferences from the evidence in the record. Schwartz admitted knowledge of the New Jersey license rquirement, but claimed that he did not learn of Andover’s unlicensed status until advised by a telephone call from Helmsley-Spear in the “ latter part of 1967 ” after all commission agreements had been negotiated.[3] But Schwartz had been doing business with Andover for over two years before raising the New Jersey statutes as a bar to performance of their agreement. And Schwartz’s testimony at the hearing strongly suggested that he first learned of Helmsley-Spear’s interest in the Royaltone transaction when the above telephone call from Helmsley-Spear was received in the “ latter part of 1967 ”. However, in the Royaltone commission agreement with Andover, dated June 12, 1967, Schwartz inserted a save harmless clause from claims by Helmsley-Spear. Furthermore, correspondence between Helmsley-Spear and Schwartz in June, 1967, at about the time the Royaltone lease was consummated, spelled out Helmsley-Spear’s interest in the Royaltone transaction.
With respect to the Newport Knitwear deal, there was testimony by Leonard Gero, Andover’s representative, that Andover’s share of the brokerage commission was to be paid directly to it and that Schwartz subsequently changed this and directed that the entire commission be paid to him. Gero further testified that when he inquired about the Newport Knitwear commission, Schwartz said that since Andover was unlicensed, he need not pay the agreed upon commission but would pay one half of that amount in return for exclusive rights on Andover’s New Jersey referrals. Schwartz denied all of these allegations.
Where the evidence is conflicting, it is, of course, for the administrative body to weigh the credibility of witnesses and to base its inferences on what it determines to be the truth. (Matter of Storlc Rest. v. Boland, 282 N. Y. 256, 267, 274.) In sum, crediting the testimony of the complainant, the respondent Secretary of State could reasonably infer prior knowledge and bad faith upon the part of petitioner. We recently had occasion to remark that the Secretary of State is vested with broad discretion in determining what constitutes untrustworthiness within the intendment of section 441-c of the Real Property *854 Law. (Matter of Gold v. Lomenzo, 29 N Y 2d 468, 477.) Certainly, the finding of untrustworthiness in this case may not be said to be without a rational basis.
Finally, there is no impediment to the imposition of a condition upon a license revocation so long as the condition imposed reasonably relates to the broker’s professional activities within the Secretary of State’s sphere of control. (Matter of Gold v. Lomenzo, supra, p. 479; Matter of Edelstein v. Department of State, 16 A D 2d 764.) Requiring the petitioner to pay the agreed upon commissions as a condition of license retention is not much different from requiring a broker to return an excessive fee. (See Matter of Gold v. Lomenzo, supra, p. 479; Matter of Edelstein v. Department of State, supra.) That petitioner’s Own untrustworthiness places him in a paradoxical situation with regard to retention of licensure in New York and New Jersey does not make the condition unreasonable.
Accordingly, I would reverse the order of the Appellate Division and reinstate the determination of the Secretary of State.
Judgment affirmed, etc.

. Helmsley-Spear sought cobroker status in the Royaltone transaction, claiming that Leonard Gero, Andover’s representative broker, had commenced work on the Royaltone lead while in the employ o£ Helmsley-Spear.

. In that action, Andover ultimately prevailed, the court finding that with regard to the Royaltone transaction, Andover was not “ doing business ” and, therefore, was entitled to the commission.

. The last of the commission agreements dealing with the Leisure Time, Inc. transaction was signed October 4, 1967.